# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**JIMMY D. HASKINS,**

       **Plaintiff,**

**vs.**                         **Case No.  5:18cv17-MCR/CAS**

**NANCY A. BERRYHILL,**
**Deputy Commissioner for**
**Operations, Social Security**
**Administration,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Deputy Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for Supplemental Security Income (SSI) filed pursuant to Title XVI of the Social Security Act.  After consideration of the entire record, it is recommended that the decision of the Commissioner be

affirmed.

## I. Procedural History

On February 10, 2015, Plaintiff, Jimmy D. Haskins, filed an

application for SSI, alleging disability beginning February 10, 2015, based

on fibromyalgia, diabetes, and depression.  Tr. 22, 168-73, 202.[1]  The claim

was initially denied on April 27, 2015, and upon reconsideration on July 6,

2015.  Tr. 22, 76-103, 108-18.  On July 14, 2015, Plaintiff requested a

hearing.  Tr. 22, 119.

On February 15, 2017, Administrative Law Judge (ALJ) Kellie

Wingate Campbell presided over a video hearing from Columbia, Missouri.

Tr. 22, 38-70.  Plaintiff appeared and testified in Panama City, Florida, and

was represented by Brian A. Dusseault, an attorney.  Tr. 22, 44-66, 104-07.

Anne H. Darnell, an impartial vocational expert, testified.  Tr. 22, 66-69,

303-04 (Resume).

On March 16, 2017, the ALJ entered a decision denying Plaintiff's

application for benefits, concluding that Plaintiff was not disabled since

---

[1]  Citations to the transcript/administrative record, ECF No. 9, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

February 10, 2015, the date the application was filed.  Tr.  22-32.

Plaintiff requested the Appeals Council to review the ALJ's decision.

Tr. 4, 166-67 (Exhibit 12B).  On December 19, 2017, the Appeals Council

denied Plaintiff's request for review making the ALJ's decision the final

decision of the Commissioner.  *See* 20 C.F.R. § 404.981.

On January 18, 2018, Plaintiff filed a Complaint in this Court seeking

judicial review.  ECF No. 1.  The parties filed memoranda of law, ECF Nos.

14 and 15, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings:

1. "The claimant has not engaged in substantial gainful activity since
   February 10, 2015, the application date."  Tr. 24.

2. "The claimant has the following severe impairments: diabetes
   mellitus; peripheral neuropathy; and obesity."  *Id.*  The ALJ
   considered Plaintiff's history of obstructive sleep apnea, acid
   reflux, hypertension, dermatitis, mild non-obstructive coronary
   artery disease, fibromyalgia, and carpal tunnel syndrome.  *Id.*  The
   ALJ found these to be non-severe impairments.  *Id.*  The ALJ also
   considered the four broad areas of mental functioning set out in
   the disability regulations for evaluating mental disorders and in the
   Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
   Tr. 25.  The ALJ determined Plaintiff had *no* limitation in
   understanding, remembering, applying information; *mild* limitation
   in interacting with others; *mild* limitation in concentrating,
   persisting, or maintaining pace; and *no* limitation in adaptive or

managing oneself.  Tr. 25.  The ALJ determined Plaintiff's mental impairments were non-severe.  Tr. 26.

3.  "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 26.  The ALJ considered the criteria in Listing 9.00B5 in concert with other Listings 1.00, 2.00, 4.00, 5.00, 6.00, 8.00, 11.00, and 12.00 regarding Plaintiff's diabetes mellitus.  The ALJ determined Plaintiff "has not exhibited any symptoms or suffered from any complications resulting from the diabetes mellitus that would indicate that this impairment meets or medically equals Listing 9.00B5."  *Id.*  The ALJ also considered the criteria of Listings 11.14 for peripheral neuropathy and determined the criteria were not met.  *Id.*

4.   "[T]he claimant has the residual functional capacity [RFC] to perform medium work as defined in 20 CFR 416.967(c) except the claimant can never climb ladders, ropes, or scaffolds and should avoid exposure to unprotected heights or hazardous work environments.  The claimant can occasionally climb stairs or ramps, stoop, kneel, crouch, and crawl.  The claimant can frequently balance and frequently engage in tasks that require handling for fingering with the left hand."  Tr. 26; *see infra* at 5, n.2.

5.  The claimant is unable to perform past relevant work as a carpenter, medium exertion with an SVP of 7, and ironworker, heavy exertion with an SVP of 7.  Tr. 30-31.  The claimant was 57 years old, which is defined as individual of advanced age, on the date the application was filed.  Tr. 31*.*  The claimant has a limited education and is able to communicate in English.  *Id.*

6.  "Considering the claimant's age, education, work experience and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform" such as laborer

(stores), auto body detailer, and assembler (auto), medium exertion, unskilled, with an SVP of 2.[2]  Tr. 31-32.

7.  "The claimant has not been under a disability, as defined in the Social Security Act, since February 10, 2015, the date the application was filed."  Tr. 32.

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  <u>Bloodsworth v.</u>

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 416.968(a).  A Specific Vocational Preparation (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month."  <u>Dictionary of Occupational Titles</u> (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  <u>Id.</u>  Unskilled work corresponds to an SVP of 1 and 2.  SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c).

Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord*

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The

Commissioner's factual findings are conclusive if supported by substantial

evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).[3]

"In making an initial determination of disability, the examiner must

consider four factors: '(1) objective medical facts or clinical findings; (2)

diagnosis of examining physicians; (3) subjective evidence of pain and

disability as testified to by the claimant and corroborated by [other

observers, including family members], and (4) the claimant's age,

education, and work history.'"  Bloodsworth, 703 F.2d at 1240 (citations

omitted).  A disability is defined as a physical or mental impairment of such

---

[3] "If the Commissioner's decision is supported by substantial evidence we must
affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232,
1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard,
however, does not permit a court to uphold the Secretary's decision by referring only to
those parts of the record which support the ALJ.  A reviewing court must view the entire
record and take account of evidence in the record which detracts from the evidence
relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).
"Unless the Secretary has analyzed all evidence and has sufficiently explained the
weight he has given to obviously probative exhibits, to say that his decision is supported
by substantial evidence approaches an abdication of the court's 'duty to scrutinize the
record as a whole to determine whether the conclusions reached are rational.'"  Cowart
v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. §§ 416.905(a), 416.909 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  <u>Barnhart v. Walton</u>, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 416.920(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.  Does the individual have the RFC to perform work despite
    limitations and are there any impairments which prevent past
    relevant work?[4]

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in

disapproval of the application for benefits.  A positive finding at step three

results in approval of the application for benefits.  At step four, the claimant

bears the burden of establishing a severe impairment that precludes the

performance of past relevant work.  Consideration is given to the

---

[4] An RFC is the most a claimant can still do despite limitations.  20 C.F.R.
§ 416.945(a)(1).  It is an assessment based upon all of the relevant evidence including
the claimant's description of her limitations, observations by treating and examining
physicians or other persons, and medical records.  *Id.*  Although an ALJ considers
medical source opinions, the responsibility for determining claimant's RFC lies with the
ALJ.  20 C.F.R. § 416.946(c); *see* SSR 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996)
(rescinded eff. Mar. 27, 2017) ("The term "residual functional capacity assessment"
describes an adjudicator's finding about the ability of an individual to perform work-
related activities.  The assessment is based upon consideration of all relevant evidence
in the case record, including medical evidence and relevant nonmedical evidence, such
as observations of lay witnesses of an individual's apparent symptomatology, an
individual's own statement of what he or she is able or unable to do, and many other
factors that could help the adjudicator determine the most reasonable findings in light of
all the evidence."); *see also* <u>Cooper v. Astrue</u>, 373 F. App'x 961, 962 (11th Cir. 2010)
(unpublished) (explaining claimant's RFC determination "is within the province of the
ALJ, not a doctor").  (In this circuit, "[u]npublished opinions are not considered binding
precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.)  The
Court will apply the SSR in effect when the ALJ rendered the decision.  *See generally*
<u>Bagliere v. Colvin</u>, No. 1:16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C.
Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

assessment of the claimant's RFC and the claimant's past relevant work.  If

the claimant can still do past relevant work, there will be a finding that the

claimant is not disabled.  If the claimant carries this burden, however, the

burden shifts to the Commissioner at step five to establish that despite the

claimant's impairments, the claimant is able to perform other work in the

national economy in light of the claimant's RFC, age, education, and work

experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224,

1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786

F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 416.920(a)(4)(v), (f) & (g).

An ALJ may make this determination either by applying the grids or by

obtaining the testimony of a vocational expert.  Phillips, 357 F.3d at 1239-

40; *see* 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner carries

this burden, the claimant must prove that he or she cannot perform the

work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007,

1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and

consequently, is responsible for producing evidence in support of his claim.

*See* 20 C.F.R. § 416.912(a); Moore, 405 F.3d at 1211.

As the finder of fact, the ALJ is charged with the duty to evaluate all of the medical opinions of the record, resolving conflicts that might appear. 20 C.F.R. § 416.927.[5]  When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, i.e., "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors.  20 C.F.R. § 416.927(b) & (c).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians "are likely to be the medical

---

[5]  This provision applies to claims filed before March 27, 2017.  For claims filed after that date, section 416.920c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies.

professionals most able to provide a detailed, longitudinal picture of your

medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone

or from reports of individual examinations, such as consultative

examinations or brief hospitalizations."  20 C.F.R. § 416.927(c)(2).  "This

requires a relationship of both duration and frequency."  Doyal v. Barnhart,

331 F.3d 758, 762 (10th Cir. 2003).  "'The treating physician doctrine is

based on the assumption that a medical professional *who has dealt with a*

*claimant and his maladies over a long period of time* will have a deeper

insight into the medical condition of the claimant than will a person who has

examined a claimant but once, or who has only seen the claimant's medical

records.'  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (emphasis

added)."  *Id.*

The reasons for giving little weight to the opinion of the treating

physician must be supported by substantial evidence, Marbury v. Sullivan,

957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.

Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is

given to a treating physician's opinion and any reason for giving it no

weight, and failure to do so is reversible error." <u>MacGregor,</u> 786 F.2d at 1053.

The ALJ may discount a treating physician's opinion report regarding an inability to work if it is unsupported by objective medical evidence and is wholly conclusory. <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583-84 (11th Cir. 1991). Stated somewhat differently, the ALJ may discount the treating physician's opinion if good cause exists to do so. <u>Hillsman v. Bowen</u>, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." <u>Lewis</u>, 125 F.3d at 1440; <u>Edwards</u>, 937 F.2d at 583 (citing <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987)). Further, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by

clinical or laboratory findings and are consistent with other evidence as to a

claimant's impairments.  <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1075 (11th

Cir. 1986).

## IV.  Legal Analysis

**Substantial evidence supports the ALJ's consideration of the
medical evidence, including opinion evidence, and Plaintiff's
testimony regarding his symptoms and limitations.**

I.

Plaintiff argues the ALJ erroneously evaluated the opinion evidence

in determining Plaintiff's RFC and erroneously evaluated Plaintiff's

testimony regarding his symptoms and limitations.  ECF No. 14 at 1.  In

particular, the ALJ gave "little weight" to the January 2017 examining

opinion of Kamel Elzawahry, M.D., because he "examined the claimant on

one occasion and his examination findings . . . do not support the overly

restrictive limitations set forth in his opinions" and "his opinion is

inconsistent with the numerous physical examinations conducted by the

claimant's treating physicians at St. Andrews Community Medical Center

(St. Andrews) . . . , which consistently showed generally unremarkable

examination results."  Tr. 29-30, 417-46, 485-92.  Plaintiff argues these

findings are erroneous.  ECF No. 14 at 6-8.  Plaintiff also argues that the

ALJ erred by not stating the weight given to the April 2015 findings of the

non-examining, non-medical reviewing Single Decision Maker (SDM)

Kendra G. Williams and for the July 2015 opinion of non-examining

reviewing agency consultant, Lionel Henry, M.D., regarding Plaintiff's

*physical* limitations.  ECF No. 14 at 4, 6; Tr. 26-30, 80-86, 94-99.  To this

end, Plaintiff notes the ALJ's RFC findings are identical to those of the

SDM and Dr. Henry.  *Id.*; *see* ECF No. 14 at 6.  Plaintiff argues that the ALJ

did not adequately account for Plaintiff's obesity.  *Id.* at 8-9.  Lastly, Plaintiff

argues the ALJ erroneously evaluated Plaintiff's testimony regarding his

symptoms and limitations.  *Id.* at 9-13.

## II.

The ALJ began consideration of Plaintiff's RFC with a discussion of

Plaintiff's allegations of disability.  Tr. 27-28.

> The claimant alleges that he suffers from medical conditions that
> cause him to experience severe pain in his lower extremities and
> hands, back and muscle pain, bowel issues, depression, and
> difficulty standing, walking, lifting, squatting, bending, reaching,
> kneeling, stair climbing, and using his hands (Exhibit 6E/8)
> [Tr. 236].  Specifically, during the hearing, the claimant testified
> that his upper and lower extremities are painful with a burning,
> sharp and stinging pain.  As a result, the claimant testified that he

could lift up to 20 pounds with both hands.  Additionally, he
testified that he must elevate his legs periodically and spends
approximately 16 hours a day, including sleeping, in a recliner.
Finally, the claimant reported that he has difficulty using his left
hand and favors the right hand when lifting.

Despite these allegations, the claimant reported that he takes care
of pets, addresses his personal care needs, prepares meals, goes
grocery shopping, performs household chores such as
vacuuming, doing dishes, and taking out the trash, and maintains
the ability to pay bills, count change, manage a savings account,
and use a checkbook (Exhibit 6E/4-6) [Tr. 232-34].  Additionally,
the claimant's father confirmed that the claimant addresses his
personal care needs, takes care of pets, prepares his own meals,
goes shopping, and performs household chores such as
vacuuming, doing dishes, and mowing the lawn (Exhibit 5E/4-6)
[Tr. 222-24].  Here, the claimant has described daily activities and
exhibited behavior inconsistent with his allegations of disabling
symptoms and limitations.

Tr. 27-28; *see infra* at 37-38, nn.13-14.[6]  "In addition to the claimant's

statements and activities, the medical evidence of record fails to prove

strong support for his allegations of disabling limitations.  The record

indicates the claimant has a history of multiple physical impairments

including diabetes mellitus, peripheral neuropathy, and obesity."  Tr. 28.

---

[6]  The ALJ may consider a claimant's daily activities when evaluating subjective
complaints of disabling pain and other symptoms.  Macia v. Bowen, 829 F.2d 1009,
1012 (11th Cir. 1987); 20 C.F.R. § 416.929(c)(3)(i).  *But see* Lewis v. Callahan, 125
F.3d at 1441 ("participation in everyday activities of short duration, such as housework
or fishing" does not disqualify a claimant from disability).

The ALJ noted that prior to the alleged onset date of disability,

Plaintiff underwent a consultative examination in August 2013 with Osama

Elshazly, M.D., who "indicated that although the claimant alleged

tenderness in his back with positive straight leg raise testing and decreased

sensation in his lower extremities, he maintained full grip strength and fine

manipulation ability and exhibited normal motor functioning (Exhibit 2F/6)

[Tr. 315]. Moreover, an x-ray of the claimant's lumbar spine revealed no

abnormalities (Exhibit 3F/2) [Tr. 318]." Tr. 28.

The ALJ also discusses "numerous physical examinations conducted

by treating sources at [St. Andrews] *prior* to the claimant's alleged onset

disability of February 10, 2015." *Id.*

> Although laboratory testing conducted throughout 2013 and 2014
> regularly note elevated glucose levels, physical examinations
> consistently show normal cardiovascular, abdominal, and
> pulmonary functioning. Additionally, examinations throughout
> 2013 and 2014 consistently note that the claimant remained
> neurologically intact with full range of motion throughout (Exhibits
> 4F/3-6, 9F/1, 3, 5, 7, 9, 11**,** 13, 15, 17, 19, 21) [Tr. 321-24, 353,
> 355, 357, 359, 361, 363, 365, 367, 369, 371, 373] in spite of
> repeated notations of noncompliance with treatment (Exhibits
> 4F/6-8; 5F/1-3; 10F/2, 11 [Tr. 324-26, 338-40, 418, 427]).

Tr. 28.

Subsequent to Plaintiff's alleged onset disability, February 10, 2015,

in March 2015, Plaintiff sought primary care from treating sources at St.

Andrews.  Tr. 28, 339-40.  Despite a glucose level of 167, a physical

examination revealed normal pulmonary, cardiovascular, abdominal

function; Plaintiff exhibited no edema in his extremities and maintained full

range of motion throughout; and he remained neurologically intact.  Tr. 339.

Plaintiff's hypertension was controlled, he had peripheral neuropathy, his

blood pressure was high, non-medicated, but he refused to take

medication; esophageal reflux is noted as non-medicated and he refuses to

take medication; depression and atopic dermatitis, left shin are noted.

Sleep apnea is also noted, but he was non-compliant with a CPAP.

Tr. 340.

> The ALJ discussed Plaintiff's obesity in more detail.  Tr. 29.
>
> In terms of obesity, the National Institutes of Health classify
> individuals as obese if their Body Mass Index (BMI) exceeds
> 30. BMI is the ratio of an individual's weight to his or her height.
> There are three levels of obesity: Level I obesity includes BMI's
> of 30.0 through 34.9; Level II obesity includes BMIs of 35.0 to
> 39.9; and Level III obesity (referred to as "extreme obesity"),
> includes BMIs equal to or greater than 40.  The records
> indicate that the claimant is 5' 11" and weighs 241 pounds
> (Exhibit 10F/1) [Tr. 417].  Based on these measurements, the
> claimant in this case has a BMI of 33.6.  SSR 02-1p provides
> that obesity can cause limitations in function; including
> limitations in sitting, standing, walking, lifting, carrying, pushing,

pulling, climbing, balance, stooping, and crouching.[7]  This Ruling also states that obesity can cause limitations in the ability to manipulate with hands or fingers, limitations in toleration of environmental factors such as heat, humidity, or hazards; and social limitations.  Although there is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment nor do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes, an individualized assessment of the impact of obesity on an individual's functioning is done to determine whether the impairment is severe.  Accordingly, the undersigned finds that the Level I obesity alone causes significant limitation in his ability to perform basic work activities, and the residual functional capacity above which limits the claimant to medium exertional work with additional postural and environmental limitations more than adequately accounts for this impairment[.]

*Id.*

---

    7  Social Security Ruling 02-01p, 2002 SSR LEXIS 1 (Sept. 12, 2002) stands for the proposition that because a claimant's weight fell within the applicable definition of obesity, obesity should be considered, among other impairments, because it can cause further degradation of a claimant's physical capacity, especially in the presence of certain impairments.  *Id.*  According to SSR 02-01p, "[t]he Clinical Guidelines recognize three levels of obesity.  Level I includes BMIs of 30.0-34.9.  Level II includes BMIs of 35.0-39.9.  Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40.  These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss."  2002 SSR LEXIS 1, at *4-5.  Plaintiff's BMI of 33.6 would place him in the Level I category.  *Id.*  Plaintiff argues the ALJ did not adequately account for Plaintiff's obesity.  ECF No. 14 at 8-9.  As noted above, the ALJ found "that the Level I obesity alone causes significant limitation in his ability to perform basic work activities, and the [RFC] above which limits the claimant to medium exertional work with additional postural and environmental limitations more than adequately accounts for this impairment."  Tr. 29.  The ALJ properly considered Plaintiff's obesity when determining his RFC.  *See generally* <u>Solomon v. Comm'r of Soc. Sec.</u>, 532 F. App'x 837, 840-41 (11th Cir. 2013) (unpublished).

On April 21, 2015, Plaintiff underwent a second independent

consultative examination with Dr. Elshazly.  Tr. 28, 342-47 (Exhibit 6F).

Dr. Elshazly

> noted that the claimant alleged tenderness over the whole back,
> with muscle spasm and slightly positive straight leg raise testing.
> Additionally, the claimant had decreased sensation in his lower
> extremities bilaterally.  Despite these findings, the claimant
> maintained full range of motion throughout and full motor strength
> in his lower extremities.  The doctor indicated that the claimant
> maintained full grip strength in his right hand but diminished grip
> strength in his left hand.  Additionally, the claimant exhibited a
> normal gait (Exhibit 6F/2-7) [Tr. 342-47].

Tr. 28.

Plaintiff had "multiple physical examinations" with treating sources at

St. Andrews and laboratory results note "elevated blood sugar levels with

sporadic complaints of tingling in his upper extremities and nausea and

vomiting."  *Id.*  Physical examinations conducted in 2015 and 2016,

however, "consistently showed normal cardiovascular, pulmonary, and

abdominal functioning.  Additionally, the claimant consistently maintained

full range of motion and remained neurologically intact (Exhibit 10F/1, 4, 6,

11, 13, 17, 19, 21, 23, 25, 27) [Tr. 417, 420, 422, 427, 429, 433, 435, 437,

439, 441, 443]."  *Id.*  The ALJ gave

> [l]imited weight . . . to the consultative examiner [Dr. Elshazly] who
> indicated that the claimant was able to comprehend and follow
> directions and that his medical problems may interfere with his
> daily activities (Exhibit 6F/7) [Tr. 347-Apr. 21, 2015].  Limited
> weight is given to this [second] opinion, as it is vague and fails to
> indicate specific functional limitations based on his examination
> findings.

Tr. 30.  Dr. Elshazly also opined Plaintiff "is able to speak and hear in a

normal fashion.  He is able to comprehend and follow direction[s].  He

has these medical problems as noted above which may interfere with

his daily activities.  I would recommend review [sic] all the records from

the free clinic at [St. Andrews].  It is up to the disability office regarding

determination."  Tr. 347.  As noted above, the ALJ considered Plaintiff's

evaluations at St. Andrews from prior to and after June 23, 2015,

through September 27, 2016, Tr. 28, after Dr. Elshazly's April 21, 2015,

evaluation, *id*.  Tr. 417-28 (Exhibit 10F).

On January 25, 2017, Plaintiff was examined by Dr. Elzawahry at

counsel's request.  Tr. 28, 485-92.  The ALJ considered his evaluation.

Tr. 28-29.

> Upon examination, the doctor indicated tenderness over the lumbar
> spine with diminished range of motion and diminished reflexes in his
> lower extremities.  Additionally, the claimant exhibited positive Tinel's
> sign in his bilateral hands.  Despite these findings, the doctor

indicated that the claimant maintained normal strength throughout his upper and lower extremities bilaterally and exhibited a normal gait (Exhibit 15F/4) [Tr. 488].

Tr. 28-29.  Dr. Elzawahry also provided a Physical Medical Source

Statement.  Tr. 489-92.  The ALJ gave "little weight" to Dr. Elzawahry's

opinion.  Tr. 29-30.

> Little weight is given to examining physician, Dr. Elzawahry, who indicated that the claimant could sit for up to 30 minutes at a time, and stand for up to 20 minutes at a time, before needing to change positions.  He indicated that the claimant could sit for less than two hours, and stand and walk for less than two hours, total in an eight-hour workday.  He indicated that the claimant would require the ability to shift positions at will.  Dr. Elzawahry further noted that the claimant would need to walk for five minutes at a time every 30 to 45 minutes during an eight-hour workday.  He indicated that the claimant would frequently need extended breaks and requires a handheld assistive device for ambulation. Dr. Elzawahry noted that the claimant could frequently lift and carry less than 10 pounds, occasionally lift and carry 10 pounds, rarely lift and carry 20 pounds, and never lift and carry 50 pounds. He found that the claimant could occasionally twist and stoop, but rarely crouch, squat, climb stairs, and climb ladders.  He found the claimant could only occasionally use his upper extremities for fine and gross manipulation, and would be off task for the 25% of the workday. He noted that the claimant was incapable of even low stress work and would be absent from work more than four days per month (Exhibit 15F/5-8) [Tr. 489-92].  Little weight is given to this opinion, as Dr. Elzawahry examined the claimant on one occasion and his examination findings detailed above do not support the overly restrictive limitations set forth in his opinion. Moreover, his opinion is inconsistent with the numerous physical examinations conducted by the claimant's treating physicians at

St. Andrews Community Medical Center outlined above, which consistently showed generally unremarkable physical examination results (Exhibit 10F/1, 4, 6, 11, 13, 17, 19, 21, 23, 25, 27) [Tr. 417, 420, 422, 427, 429, 433, 435, 437, 439, 441, 443].

Tr. 29-30.

In addition to the medical evidence recited above, the ALJ also considered Plaintiff's Global Assessment of Functioning (GAF) scores.[8]

---

[8] The American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th Ed. Text Revision 2000), includes the scale that is primarily used by mental health practitioners. The GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." See DSM-IV-TR 32-34. The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale. *Id. See* Nichols v. Astrue, Case No. 3:11cv409/LC/CJK, 2012 U.S. Dist. LEXIS 119347, at *26-29 (N.D. Fla. Aug. 7, 2012) (discussing GAF scale). A GAF scale rating of 21-30 indicates behaviors considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. DSM-IV-TR 34. A GAF scale rating of 31-40 is indicative of some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *Id.* A GAF scale rating of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational or school functioning. *Id.* A GAF scale rating of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.* A GAF scale rating of 61-70 is indicative of some mild symptoms or some difficulty in social, occupational or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. *Id.* The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). In the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) (5th ed. 2013), "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable

Tr. 30.

Additionally, prior to the alleged onset of disability, the record contains Global Assessment of Functioning (GAF) scores of 50-55 (Exhibit 1F/5, 12F/1, 3, 5, 8) [Tr. 309, 460, 462, 464, 467].[9]  The GAF score is a clinician's rating, of an individual's overall psychological, social and occupational functioning, on a scale of 0 to 100.  A rating of 50-55 indicates moderate to serious symptoms or moderate to serious difficulty in social, occupational, or school functioning.  (See, American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision pg. 34, 2000).  Although a GAF score can offer some evidence regarding the severity of the claimant's mental impairment, it is not dispositive on the issue.  A GAF score is a mere snapshot of the claimant's ability to function at the particular time of the assessment.  These scores were offered prior to the alleged onset of disability. Given the remoteness of the scores and the fact that GAF scores are no longer utilized in the field, they offer little insight into the claimant's ability to function during the period at issue and are given little weight.

---

psychometrics in routine practice.  In order to provide a global measure of disability, the WHO Disability Assessment Schedule (WHODAS) is included, for further study, in Section III of DSM-5 (see the chapter "Assessment Measures")."  DSM-5 at 16; see Finley v. Colvin, No. 3:12-7908, 2013 WL 6384355, at *23 n.9 (S.D. W.Va. Dec. 5, 2013) ("It should be noted that in the latest edition of the [DSM], the GAF scale was abandoned as a measurement tool.").

9  Exhibit 1F includes a consultative psychological examination conducted by Julian A. Salinas, Ph.D., on August 1, 2013.  Tr. 306-09.  He gave Plaintiff a current GAF score of 55.  Tr. 309.  Dr. Salinas' summary/conclusions included: "He reports a history of antidepressants and counseling dating to his second marriage and that he currently receives no treatment.  His complaints are consistent with chronic depression of a moderate intensity at this time, with exacerbation associated with life stressors.  Such difficulties are likely associated with periods of avolition and apathy, with associated diminished behavioral efficiency, as well as social problems given irritability and withdrawal.  He would likely benefit from a psychiatric consultation and cognitive-behavioral psychotherapy."  Id.  The ALJ referred to part of Dr. Salinas' evaluation at step twp.  Tr. 25.

*Id.*

Pursuant to SSR 96-6p, *see infra* at 30-31, the ALJ considered "the administrative findings of fact made by State Agency *physicians* regarding the claimant's *mental* capacity to perform work-related functions (Exhibit 2A, 5A) [*see* Tr. 80-82 (Adrine McKenzie, Ph.D. (Exhibit 2A - Apr. 15, 2015) (initial)], Tr. 94-96 (Jennifer Meyer, Ph.D. (Exhibit 5A - June 19, 2015) (reconsideration)]."  Tr. 29 (emphasis added); *see also* Tr. 25 (at step two, ALJ referring to Dr. Meyer's findings Plaintiff had *no* limitation in the first functional area of understanding, remembering, or applying information and only *mild* limitation regarding the second functional area of interacting with others and the third functional area of concentration, persistence, or maintaining pace).  The ALJ further noted:

> The opinions are weighed as statements from non-examining
> expert sources.  Based on the evidence, the undersigned
> concludes the State Agency adequately considered the medical
> evidence of record regarding the claimant's *mental* impairments,
> and *significant* weight is given to the opinions indicating no more
> than mild limitations in the claimant's ability to function.
> *Significant* weight is given to these opinions, as they are
> supported by the lack of *mental* health treatment during the period
> at issue and the claimant's activities of daily living detailed above.

Tr. 29 (emphasis added).  The ALJ did not expressly refer to the

opinions rendered by SDM Kendra G. Williams, Tr.80, 82-86 (initial),

and Lionel Henry, M.D., Tr. 96-99 (reconsideration).  Further, it does

not appear that SDM Williams is a physician; Dr. Henry is a physician

with an M.D. designation.  *Id.*

The ALJ considered Plaintiff's father's "third-party statements."

Tr. 27, 30; *see* Tr. 219-28 (Exhibit 5E).  The ALJ determined that more

weight could not be given these statements "because it is not

substantially consistent with the preponderance of the observations by

treating sources in this case, particularly those at [St. Andrews]

consistently showing generally unremarkable physical examination

results (Exhibit 10F/1, 4, 6, 11, 13, 17, 19, 21, 23, 25, 27) [Tr. 417, 420,

422, 427, 429, 433, 435, 437, 439, 441, 443]."  Tr. 30.

The ALJ concluded the RFC determination.

Based on the entire record, including the testimony of the
claimant, the undersigned concludes the evidence fails to support
the claimant's assertions of total disability.  Despite evidence
demonstrating medically determinable "severe" impairments, the
evidence further establishes the claimant retains the capacity to
function adequately to perform many basic activities associated
with work.  The above residual functional capacity assessment is
supported by the objective medical evidence contained in the
record. In sum, the claimant does experience some limitations, but
only to the extent described in the residual functional capacity

above.

Tr. 30.

### III.

Plaintiff argues the ALJ erred when he concluded that

Dr. Elzawahry's opinion was inconsistent with the numerous physical

examinations conducted by Plaintiff's treating physicians at St. Andrews,

which consistently showed generally unremarkable examination results.

Tr. 30.  Plaintiff also suggests the physical examination findings cannot be

relied on given that he only went to those examinations for diabetes

mellitus and that the record does not include "extensive physical

examination findings" about other conditions or issues.  ECF No. 14 at 6-7.

As noted by the ALJ, Plaintiff's physical examinations from June 2015

through September 2016 consistently show normal cardiovascular,

pulmonary, and abdominal functioning, and they showed Plaintiff

maintained full range of motion and was intact neurologically.  Tr. 28, 339,

417, 420, 422, 427, 429, 433, 435, 437, 441, 443.

The ALJ evaluated Dr. Elzawahry's January 25, 2017, consultative

opinion.  Tr. 28-30, 486-92.  Plaintiff presented to Dr. Elzawahry for

"peripheral neuropathy." Tr. 486. He has a history of diabetes mellitus, type II, with peripheral neuropathy and related gastroparesis. *Id.* Additional reasons for the visit included back pain, anxiety, and depression. *Id.* Relevant here, back, joint, and muscle pain were present; joint swelling, muscle cramps, and muscle weakness were not present. Tr. 487. Depression was present, but anxiety was not. *Id.* Affect, mood, and speech were normal; he followed simple and complex commands; he had immediate recall and short and long-term memory were examined and normal. Tr. 488. He had the ability to calculate and his attention span, judgment, and ability to abstract were all within normal limits. *Id.* Naming, repetition, and spelling were normal. *Id.* His bulk, contour, and tone were normal with 5/5 normal muscle strength. *Id.* His tandem walking, gait, station, and base were normal. *Id.* Examination of the spine revealed tenderness over the region of the lumbar spine; movement of the spine was limited; and Tinel's sign was positive, "bilateral hands." *Id.* The assessment and plan included low back pain, type II diabetes militants, diabetic peripheral neuropathy, gastroparesis, and anxiety. *Id.* Plaintiff does not argue the ALJ overlooked any relevant findings of Dr. Elzawahry.

ECF No. 14 at 5-9; *see* Tr. 27-30.

Dr. Elzawahry also provided a Physical Medical Source Statement dated January 25, 2017.  Tr. 489-92; *see supra* at 20-22.  As the ALJ noted, Dr. Elzawahry opined Plaintiff could sit for up to 30 minutes at a time and stand for up to 20 minutes at a time before needing to change positions.  Tr. 29, 490.  Plaintiff could sit for less than two hours total and stand and walk for less than two hours total in an eight-hour workday.  *Id.* He would require the ability to shift positions at will and would need to walk for five minutes at a time every 30 to 45 minutes during an eight-hour workday.  *Id.*  He would frequently need extended breaks and requires a handheld assistive device for ambulation.  Tr. 29, 490-91.  He could frequently lift and carry less than 10 pounds, occasionally lift and carry 10 pounds, rarely lift and carry 20 pounds and never lift and carry 50 pounds.  Tr. 29, 491.  He could occasionally twist and stoop, but rarely crouch, squat, climb stairs, or climb ladders.  *Id.*  He could only occasionally use his upper extremities for fine and gross manipulation and would be off task 25 percent of the workday.  *Id.*  He was incapable of even low stress work and would be absent from work more than four days per month.  Tr. 29, 492.

The ALJ considered Dr. Elzawahry's opinions, but gave them "little weight," because he examined Plaintiff "on one occasion and his examination findings detailed above do not support the overly restrictive limitations set forth in his opinion.  Moreover, his opinion is inconsistent with the numerous physical examinations conducted by the claimant's treating physicians at [St. Andrews] outlined above, which consistently showed generally unremarkable physical examination results (Exhibit 10/F1, 4, 6, 11, 13, 17, 19, 21, 23, 25, 27)."  Tr. 29-30; *see* Tr. 417, 420, 422, 427, 429, 433, 435, 437, 439, 441, 443.  The examinations at St. Andrews span from approximately June 2015 through September 2016.  *Id.* Further, as the ALJ described in the decision, Dr. Elzawahry found Plaintiff had normal strength throughout the upper and lower extremities bilaterally and had a normal gait. Tr. 30, 488.[10]

---

[10]  As noted above, the ALJ also gave limited weight to the more recent of two consultative examination evaluations by Dr. Elshazly on April 21, 2015, Tr. 28-30, 342-47 (Exhibit 6F), a matter not contested by Plaintiff.  ECF No. 14.  In part, Dr. Elshazly opined Plaintiff had "full" range of motion throughout and full motor strength in his lower extremities.  Tr. Tr. 28, 342-43.  On August 7, 2013, Dr. Elshazly examined Plaintiff and, in part, noted he had limited range of motion in his lumbar spine, but full range of motion elsewhere.  Tr. 311-13 (Exhibit 2F).  On April 21, 2015, Dr. Elshazly noted Plaintiff had full range of motion in all extremities, including the lumbar spine, Tr. 342, as noted by the ALJ.  Tr. 28.

Generally, the opinions of one-time examiners, who are non-treating doctors, are not entitled to deference or special consideration.  *See* Crawford v. Comm'r of Soc. Sec., 360 F.3d 1155, 1160 (11th Cir. 2004).  In addition, an ALJ need not give good reasons for the weight he assigns opinions from doctors who examined, but did not treat the claimant.  *See* Denomme v. Comm'r of Soc. Sec. Admin., 518 F. App'x 875, 877-78 (11th Cir. 2013) (unpublished) (citing McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987); *see also* 20 C.F.R. § 416.927(c)(2) (requiring ALJs to provide "good reasons" for the weight assigned to opinions from treating acceptable medical sources).  In the end, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion.  Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).

Conversely, although not given the same controlling weight or deference as the opinion of treating physicians, the findings of a state agency medical consultant regarding the nature and severity of a claimant's impairments must be treated as expert opinion at the ALJ and Appeals Council levels of administrative review.  *See* SSR 96-6p, 1996 SSR LEXIS 3, at *4 (July 2, 1996) (rescinded and replaced by SSR 17-2p, eff. Mar. 27,

2017).  The findings of State agency medical consultant may provide additional evidence to support the ALJ's findings.  *See* Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).

A mere diagnosis does not necessarily reflect adversely regarding a claimant's ability to work.  *See* Wind v. Barnhart, 133 F. App'x at 690; *see also* Moore, 405 F.3d at 1213 n.6.  Plaintiff has not demonstrated he has limitations greater than those identified by the ALJ.  Further, substantial evidence supports the ALJ's consideration of Dr. Elzawahry's opinion and the determination to give it "little weight."  *See generally* D'Andrea v. Comm'r of Soc. Sec., 389 F. App'x 944, 948 (11th Cir. 2010) (unpublished) (per curiam). No error has been shown.

## IV.

Plaintiff also argues the ALJ erred in not stating "what weight was given to the April 2015 findings of the non-examining reviewing non-medical single decision maker ("SDM") [Williams] or the July 2015 opinion of non-examining reviewing state agency consultant [Dr. Henry], regarding [Plaintiff's] physical limitations, [a]though the ALJ's RFC findings are

identical to those of the SDM and Dr. Henry.  (R 26-30, 80-86, and 94-99)."
ECF No. 14 at 6.

The ALJ discussed the evidence that formed the basis of the RFC
finding, Tr. 26-30, including the "opinion evidence" of the "State agency
*physicians* regarding the claimant's *mental* capacity to perform work-related
functions," and gave "significant weight" to their opinions.  Tr. 29 (emphasis
added; citing Exhibits 2A and 5A).  SDM Williams performed a disability
determination at the initial level of review on April 3, 2015.  Her
determination is found at Exhibit 2A, Tr. 76-80, 82-86.[11]  Her name does
not appear in the reconsideration level report.  Tr. 89-101 (Exhibit 5A).  The
ALJ does not refer directly or indirectly to any evaluation made by SDM
Williams.  *Id.*; *see* ECF No. 15 at 12 (Commissioner noting "the ALJ did not
mention the SDM's findings as evidence that supported the RFC at all
(Tr. 27-30)").  Although an ALJ is not required to recite all the evidence in
the record that supports a conclusion, *see generally* Hutchinson v. Bowen,
787 F.2d 1461, 1463 (11th Cir. 1986), it does not appear the ALJ expressly

---

[11]  The ALJ refers to Exhibit 2A once in the decision.  Tr. 29.

considered the SDM's findings when determining Plaintiff's RFC.  Tr. 27-30.

Conversely, the Commissioner agrees with Plaintiff that "the ALJ relied on Dr. Henry's opinion but did not state the weight given to the opinion.  Pl's Br. at 6-8."  ECF No. 15 at 12.  The Commissioner argues that any error is harmless "given that the RFC finding is completely consistent with the opinion."  *Id.* (citation omitted).

Dr. Henry provided a record-only review at the reconsideration level. Tr. 96-101 (Exhibit 5A).  On reconsideration, Dr. Meyer assessed Plaintiff's mental issues, *see* Tr. 94-96, whereas Dr. Henry assessed Plaintiff's physical issues and provided an RFC assessment, which mirrored the ALJ's RFC determination, including left hand restrictions or limitations, Tr. 97-98.  Tr. 96-101 (Exhibit 5A); *compare with* Tr. 26; *see also* Tr. 28, 346 (Apr. 21, 2015) (Dr. Elshazly opined Plaintiff had full grip strength of the right hand, but diminished strength in the left hand and a normal gait).

As with SMD Williams, the ALJ does not expressly mention Dr. Henry as part of the RFC determination.  Tr. 26-30.  The ALJ prominently mentions Dr. Meyer at step three of the sequential evaluation process,

Tr. 25 (Exhibit 5A at 7), but mentions no other State agency consultant, including Dr. Henry.  Tr. 24-26.  Adrine McKenzie, Ph.D., provided a record-only consultative examination report at the initial stage only, but is not mentioned by name.  Tr. 80-82 (Exhibit 2A).  Yet, referring to Exhibits 2A and 5A, the ALJ gave the State agency physicians' opinions "significant weight."  Tr. 29.

Nevertheless, the failure to expressly provide the weight given to Dr. Henry's opinion is at best harmless error.  *See generally* Colon v. Colvin, 660 F. App'x 867, 870 (11th Cir. 2016) (unpublished).  Substantial evidence supports the ALJ's RFC determination because the RFC determination included, among other evidence, evidence from Plaintiff's examinations at St. Andrews from March 2015 through September 2016, which showed generally normal findings.  *See* Tr. 28, 417, 429, 427, 433, 435, 437, 439, 441, 443.

Plaintiff requests this Court to re-weigh the evidence and substitute its discretion for that of the ALJ.  Bloodsworth, 703 F.2d at 1239.  The role of a reviewing court under 42 U.S.C. § 405(g) is limited to determining whether there is substantial evidence in the record as a whole to support

the decision.  As long as the ALJ's decision is supported by substantial evidence and based upon correct application of the law, as it is in this case, it is entitled to deference and should be upheld.  Substantial evidence supports the ALJ's consideration of Plaintiff's RFC.  No error has been shown.

## V.

Plaintiff argues the ALJ erroneously evaluated Plaintiff's testimony regarding his symptoms and limitations.  ECF No. 14 at 9-13.

When a claimant attempts to prove disability based on the claimant's subjective testimony, the claimant must provide evidence of an underlying medical condition in either objective medical evidence confirming the severity of the alleged symptoms or evidence establishing that the medical condition could reasonably be expected to give rise to the alleged symptoms.  *See* 20 C.F.R. § 416.929(a)-(b); SSR 16-3p, 2016 SSR LEXIS 4 (Mar. 16, 2016) (replacing SSR 96-7p, 1996 SSR LEXIS 4 (July 2, 1996) (eff. Mar. 16, 2016, eliminating "the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term.  In so doing, we clarify that subjective symptom evaluation is not an examination of an

individual's character.  Instead, we will more closely follow our regulatory

language regarding symptom evaluation."  2016 SSR LEXIS 4, at *1-2);

*see* Wilson v. Barnhart, 284 F. 3d1219, 1225-26 (11th Cir. 2002) (pre-

dating SSR 16-3p).  An ALJ need only articulate explicit and adequate

reasons for discrediting Plaintiff's testimony.  *See* 20 C.F.R. § 416.929;

Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing Holt v.

Sullivan, 921 F. 2d 1221, 1223 (11th Cir. 1991)).  Further, it is an ALJ's

province to determine whether to credit a claimant's subjective testimony

and a reviewing court will not disturb an ALJ's clearly articulated

determination supported by evidence.  *See* Mitchell v. Comm'r of Soc. Sec.

Admin., 771 F. 3d 780, 781 (11th Cir. 2014).

Pain is subjectively experienced by the claimant, but that does not

mean that only a mental health professional may express an opinion as to

the effects of pain.  One begins with the familiar way that subjective

complaints of pain are evaluated:

> In order to establish a disability based on testimony of pain and
> other symptoms, the claimant must satisfy two parts of a
> three-part test showing: (1) evidence of an underlying medical
> condition; and (2) either (a) objective medical evidence
> confirming the severity of the alleged pain; or (b) that the
> objectively determined medical condition can reasonably be

expected to give rise to the claimed pain.

<u>Wilson</u>, 284 F.3d at 1225.  *See* 20 C.F.R §§ 416.929 (explaining how

symptoms and pain are evaluated); 416.945(e) (regarding RFC, total

limiting effects).[12]

The ALJ found Plaintiff's subjective complaints inconsistent with his

activities of daily living, as well as his reported abilities.  Tr. 27; *see supra*

at 15, n.6.  Plaintiff reported that he takes care of pets, addresses his

personal care needs, prepares meals, goes grocery shopping, performs

household chores such as vacuuming, does dishes, and takes out the

trash.  Tr. 27, 232-34 (Exhibit 6E).  He reported that he maintains the ability

to pay bills, count change, manage a savings account, and use a

checkbook.[13]  Tr. 27, 234.  His father "confirmed that [Plaintiff] addresses

---

[12]  Although the ALJ did not expressly refer to the three-part part standard, the ALJ's findings, discussion, and citation to 20 C.F.R. § 416.929, Tr. 27, indicate that the pain standard was applied.  <u>Wilson</u>, 284 F.3d at 1226.

[13]  Plaintiff further stated that he fixes breakfast and makes sandwiches daily, but that others in the household do the cooking.  Tr. 233.  He confirmed that he carries out the trash, vacuums vinyl floors, and does dishes, although "not too long" and "not too often."  Tr. 233; *see* Tr. 52.  He does not need help or encouragement doing these things.  *Id.*  He goes outside daily for short periods of time.  Tr. 234.  He does not have a driver's license.  *Id.*  He shops in stores for personal items only as needed.  *Id.*  He lives with his parents, does not need to be reminded to go places, does not need someone to accompany him, and does not have problems getting along with family, friends, neighbors, or others.  Tr. 235-36; *see* Tr. 52.  He stated he maybe can walk a

his personal needs, takes care of pets, prepares his own meals, goes shopping, performs household chores such as vacuuming, doing dishes, and mowing the lawn (Exhibit 5E/4-6)."[14]  Tr. 27, 222 24.

Plaintiff contends the ALJ erroneously evaluated Plaintiff's testimony "regarding his symptoms and limitations based upon misrepresentations of his reported daily activities."  ECF No. 14 at 13.  Although there are some inconsistencies in the statements made by Plaintiff and his father, they do not sufficiently detract from the ALJ's characterization of Plaintiff's daily activities.  *See, e.g., supra* at 38-39, nn.13-14.  The ALJ did not state Plaintiff performed the activities all day or every day.  Rather, the ALJ

---

block in five minutes before he stops and rests.  Tr. 236.  He can follow written and spoken instructions, gets along with authority figures, can handle changes in routine and has not noticed any unusual behavior or fears.  Tr. 237.  Plaintiff testified he "live[s] [including sleep] in his recliner" because there is "[n]othing else to do."  Tr. 53.  "[I]t keeps the pain from throbbing" and the weight off his legs.  *Id.*  He uses a cane "when [his] back gets real bad," but he tries not to use it because it puts pressure on his palm and runs up to his elbow and shoulder.  Tr. 56.

[14]  His father also stated that Plaintiff lived with he and his mother (24/7); sometimes he has to be reminded to take his insulin; he watches a lot of television; stays home most of the time; his ability to lift, squat, bend, stand, reach, walk, kneel, and stair climbing are affected by his condition(s); he walks only a short distance before stopping to rest; he has no need for written instructions and is able to follow spoken directions; he gets along with authority figures; he is not good at handling stress although he can handle changes in routine; and he uses a cane to assist in walking at times and has prescription glasses for close-up reading.  Tr. 221-28 (Mar.19, 2015).  On the same date, it appears Plaintiff (Jimmy Dale Haskins) completed an adult function report.  Tr. 232-41 (Exhibit 6E); *see supra* at 38, n.13.

indicated that the level of activities Plaintiff performed was inconsistent with

his allegations of disabling pain. Tr. 27.  It is not the function of the Court to

reweigh the evidence.  *See generally* <u>Moore</u>, 405 F.3d at 1213.  Substantial

evidence supports the ALJ's evaluation of Plaintiff's subjective complaints.

*See* <u>Mitchell</u>, 771 F. 3d at 782.

## V.  Conclusion

Considering the record as a whole, the findings of the ALJ are based

upon substantial evidence in the record and the ALJ correctly applied the

law.  Accordingly, it is respectfully recommended that the decision of the

Commissioner to deny Plaintiff's application for Social Security benefits be

**AFFIRMED** and judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on July 10, 2018.

s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this
Report and Recommendation, a party may serve and file specific
written objections to these proposed findings and recommendations.
Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon
all other parties.  A party may respond to another party's objections
within fourteen (14) days after being served with a copy thereof.  Fed.**

**R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**